## CASE NO. 25-5667

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**JACOB JULICK,**

**Plaintiff - Appellant,**

**v.**

**SCOTT JORDAN; JASON DENNY, Captain/Officer, Kentucky State Penitentiary; LAUREN MASSEY, Unit Administrator, Kentucky State Penitentiary; DYLAN BOND, Officer, Kentucky State Penitentiary and SASHA PROMOZICH VILLASENOR, in their individual capacities**

**Defendants – Appellees**

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## CIVIL ACTION NO. 5:23-CV-51

---

## BRIEF OF DEFENDANTS-APPELLEES SCOTT JORDAN, et al, IN THEIR INDIVIDUAL CAPACITIES

---

**Mark F. Bizzell**
**Justice and Public Safety Cabinet**
**Office of Legal Services**
**125 Holmes Street, 2nd Floor**
**Frankfort, KY  40601**
**(502) 782-1097**
**mark.bizzell@ky.gov**
**Counsel for Appellees**

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees do not request oral argument.  The subject matter is not complex, and the legal issues are well-settled, rendering oral argument unnecessary.

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Sixth Circuit Rule 26.1, Defendants-Appellees, Scott Jordan; Jason Denny, Lauren Massey and Sasha Promozich Villasenor, in their individual and official capacities, make the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?

**No.**

2.  Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

**No.**

DATED: March 30, 2026.

*/s/ Mark F. Bizzell*
Mark F. Bizzell

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ........................................... i

**RULE 26.1 DISCLOSURE STATEMENT** ........................................................ i

**TABLE OF CONTENTS** ................................................................................ ii

**TABLE OF AUTHORITIES** ........................................................................... iii

**STATEMENT OF JURISDICTION** ................................................................ 1

**STATEMENT OF ISSUES** .............................................................................. 1

**STATEMENT OF THE CASE** ........................................................................ 1

**SUMMARY OF THE ARGUMENT** ................................................................ 9

**STANDARD OF REVIEW** ............................................................................. 10

**ARGUMENT** .................................................................................................. 11

I.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON JULICK'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM BECAUSE BOND'S USE OF OC SPRAY TO GAIN COMPLIANCE OF JULICK, DID NOT MEET THE OBJECTIVE OR SUBJECTIVE COMPONENT OF THE CLAIM ....................................................................... 11

    1. OBJECTIVE COMPONENT ................................................................ 12

    2. SUBJECTIVE COMPONENT ............................................................. 13

II.  THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT ON JULICK'S EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST JORDAN, DENNEY, AND VILLASENOR BECAUSE THE ALLEGED CONDITIONS DID NOT MEET THE OBJECTIVE COMPONENT OF THE CLAIMS ...................................... 17

**CONCLUSION** ............................................................................................... 27

**CERTIFICATE OF COMPLIANCE** ......................................................**28**

**CERTIFICATE OF SERVICE** ............................................................**28**

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ....... 29**

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Chapman*, No. 3:12-cv-88 (CAR), 2013 U.S. Dist. LEXIS 118731

(M.D. Ga. July 19, 2013) ......................................................................24

*Brown v. Mahlman*, No. 1:22-cv-00239, 2022 U.S. Dist. LEXIS 228343, at *10 (S.D.

Ohio Dec. 19, 2022) (citing *Lamb v. Howe*, 677 at 209-10) ...................23

*Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992)(quoting *Soto v. Dickey*, 744

F.2d 1260, 1267 (7th Cir. 1984)......................................... ....... ..................11

*Chilton v. Walters*, No. 3:21 CV 1312, 2022 U.S. Dist. LEXIS 32066, at *6-10 (N.D.

Ohio Feb. 23, 2022) ...................................................................... 21

*Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) ...................................... 13

*Farmer v. Brennan*, 511 U.S. 825, 834, 825 (1994) ..........................................19, 20

*Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012)....................................20

*Hernandez v. Simmons*, No. 19-5344, 2020 U.S. App. LEXIS 29233, at *1-2, 7

(6th Cir. Sept. 14, 2020) ............................................................ 12

*Hudson v. McMillian*, 503 U.S. at 9-10 ....................................... 13,14,19

*Hudson v. Palmer*, 468 U.S. 516, 517 (1984) ...................................... 19

*Hutto v. Finney,* 437 U.S. 678, 687 (1978)............................................ 20

*Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)......................................................19

*Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) ................................... 16

*Johnson v. Cool*, No. 1:22-CV-00031, 2024 WL 3992412, at *10-11 (S.D. Ohio Aug. 29, 2024) ......................................................................................................22

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023) ............................ 12,14

*Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 U.S. Dist. LEXIS 7882, at *3, 5 (M.D. Tenn. Feb. 25, 2015) ..........................................................25

*Keltner v. Cook*, No. 3:16-CV-179-TA, 2017 U.S. Dist. LEXIS 87084, at *5-6 (E.D. Tenn. Dec. 11, 2024)................................................................................. 212

*Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017)................................... 20, 23

*Moore v. Goulet*, No. 1:22-cv-279, 2023 U.S. Dist. LEXIS 165728, at *13-16 (W.D. Mich. Aug. 21, 2023) ......................................................................................21

*Newell v. Watson*, No. 1:14-CV-304, 2016 U.S. Dist. LEXIS 41054, at *22 (E.D. Tenn. Mar. 29, 2016) ......................................................................................24

*Pinkston v. Hall*, No. No. 5:18-cv-103-MTP, 2020 U.S. Dist. LEXIS 86763, at *43-44 (S.D. Miss. May 18, 2020) ......................................................................25

*Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011).......................... 21

*Taylor v. Riojas*, 592 U.S. 7 (2020) ..................................................................23

*Taylor v. Wright*, No. 20-13041, 2023 U.S. Dist. LEXIS 134110, at *11 (E.D. Mich. Apr. 19, 2023) ....................................................................................... 21

iv

*Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999)……………………...........……….17

*Walker v. Mintzes*, 771 F.2d 920, 928 (6th Cir. 1985)............................................. 22

*Watison v. Perry*, No. 23-5059, 2024 U.S. App. LEXIS 3674, at *6 (6th Cir. Feb. 15, 2024) ....................................................................................................... 21

*Williams v. Curtin*, 631 F.3d at 383 ........................................................................12

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991) .......................................................12, 19

## **STATUTES**

42 U.S.C. § 1983 ....................................................................................................... 7

## STATEMENT OF JURISDICTION

Appellees Dylan Bond ("Bond"), Scott Jordan ("Jordan"), Jason Denny ("Denny"), and Sasha Primozich Villasenor ("Villasenor") agree with Julick's Statement of Jurisdiction.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in granting summary judgment on Julick's Eighth Amendment excessive force claim against Bond because his use of OC spray to gain compliance of Julick, did not meet the objective or subjective component of the claim.

2. Whether the district court erred in granting summary judgment on Julick's Eighth Amendment conditions of confinement claim against Jordan, Denny, and Villasenor because the alleged conditions did not meet the objective component of the claim.

## STATEMENT OF THE CASE

### I.    Factual background.

Appellees Bond, Jordan, Denny, and Villasenor do not accept Julick's Statement of the Case because much of it is based on unsupported conclusory statements regarding the actions, thoughts, and motives of the Appellees and other KSP employees, and is unsupported in the record.

1

On December 25, 2022, several inmates at KSP assaulted a corrections officer, causing substantial injuries to the officer. (Summ. J. Motion, R. 43, Page ID# 225) (citing Extraordinary Occurrence Rpt. No. KSP-2022-12-098, R. 43-1, Page ID# 238-260).  Corrections officials quickly learned that the assault was a "STG related incident," which indicated that the inmates involved were part of a gang or "security threat group." Corrections officials concluded that Julick was involved in the December 25, 2022, assault on the corrections officer. (*Id*,; Extraordinary Occurrence Rpt. No. KSP-2022-12-100, R. 43-3, Page ID# 263-88). Julick was transferred into the 3 Cellhouse restricted housing unit ("RHU"), cell 3 14L/004, classified as "maximum assault status," placed on property restrictions, his standard-issue prison clothing was taken, and he was provided only suicide prevention clothing (e.g., "paper boxers") and a mattress. (*Id.* at Page ID# 225-26; 12/25/22 Behavioral Control Form, R. 43-2, Page ID# 261-62). Because Julick was involved in a violent assault on a corrections officer, prison officials deemed these property restrictions "necessary for the safety of inmate and secure operation of the facility." (*Id.)*

On December 26, 2022, Julick made statements to staff indicating that he was going to harm himself.  (Summ. J. Motion, R. 43, Page ID#: 226; 12/26/2022 Behavioral Control Form, R. 43-4, Page ID# 289-09).  Due to this threat, Julick's cell was stripped, and he was again permitted only a mattress and suicide prevention

2

clothing and additionally placed on one-on-one observation until Julick could be seen by mental health staff. (*Id*.; 12/26/2022 Behavioral Control Form, R. 43-4, Page ID# 289-09).   While Julicks's cell was being stripped, he was placed in mechanical restraints and placed in a holding cell, or "strip cage." (*Id*.; Extraordinary Occurrence Rpt. No. KSP-2022-12-106, R. 43-5, Page ID# 291; Disciplinary Rpt. No. KSP-2023-0001813, R. 43-6, Page ID# 302).

While Julick was in the strip cage he was being monitored by a corrections officer and was ordered to remain in a kneeling compliance position.  (Summ. J. Motion, R. 43, Page ID#: 226; Disciplinary Rpt. No. KSP-2023-0001813, DN 43-6, Page ID# 303). Bond then entered the area of the strip cage to take over monitoring Julick and ordered him to "face the back wall of the strip cage and remain silent." (*Id*.).  Julick disregarded this order.  (*Id*; Disciplinary Rpt. No. KSP-2023-0001813, DN 43-6, Page ID# 302-03). Indeed, Bond averred that "During my interactions with Plaintiff Julick on December 26, 2022, I repeatedly issued explicit orders for him to face the wall. These instructions were essential for maintaining order and ensuring the safety of everyone involved during the transfer process." (Affidavit of Dylan Bond, DN 59-8, Page ID #: 500).  He further averred, "Continuing to monitor the Plaintiff's actions of 12/26/2022, it became clear that Plaintiff Julick was turning his head toward me, exhibiting the combative behavior.  My repeated orders for him to turn and face the wall went unheeded, and he remained non-compliant." (*Id.*, Page

3

ID # 501).  Bond also stated in his affidavit that he made the decision to deploy

pepper spray "to ensure compliance from the Plaintiff." (*Id.*).

This interaction between Bond and Julick, and what followed, was recorded

by security camera. (*See* Institutional Video at 0:00-15:30, R. 41 [filed under seal]).

The District Court objectively and accurately described what was depicted therein

as follows:

> The Court has carefully reviewed the video evidence produced by Defendants.  The video, which contains no sound, shows Plaintiff kneeling with his back to the door of the strip cage and Defendant Bond observing him directly outside the door.  Plaintiff immediately turns his head to his left with a smile on his face visible to the camera and then turns his head and upper body to his right.  Although the camera is facing the back of Plaintiff's head, it is evident from the movement of his head that he is talking, and he repeatedly turns his head to the right. Defendant Bond is seen speaking to Plaintiff.  Plaintiff turns his head to the right and shakes his head back and forth.  The video shows Defendant Bond observing this behavior for twenty-five seconds before he removes a can of OC spray from his belt and points it toward the back of Plaintiff's head and speaks to Plaintiff.  He holds the can of OC spray for approximately five seconds while Plaintiff can be seen turning his head to the right.  Defendant Bond then shoots an approximately one second burst of OC spray burst and a second shorter burst on the back of Plaintiff's head and neck.  The video shows Plaintiff's head continue to move and Plaintiff continue to speak and approximately eleven seconds after the second burst he turns his head to the right, and Defendant Bond sprays another one second burst of OC spray on the back of Plaintiff's head and neck.  The video shows Plaintiff continue to move his head, and Defendant Bond then draws his taser and points it at Plaintiff but does not deploy his taser.  Approximately eleven minutes after the last burst of OC spray, Plaintiff is removed from the strip cage and taken to be decontaminated by Defendant Bond and two other officers.

(Summ. J. Op. & Order, R. 68, Page ID# 593-94).

4

Julick does not dispute that he was turning his head. During the adjustment hearing on the disciplinary charge issued to Julick (Disciplinary Rpt. No. KSP-2023-0001813, R 43-6, Page ID# 302-04) Julick admitted that "Bond kept yelling at me to face the wall" and "I did keep turning my head." (Summ. J. Motion, R. 43, Page ID# 226; Adjustment Hearing Audio at 0:47, et seq., R. 43-7). Further, in the superseding amended complaint, Julick stated "I continue to turn my head, but never make any motion toward him or stop facing the wall with my body.  I only turn my head I try to laugh it off and I ask him if he's proud of his self he tells me to stop talking and face the wall, then he spray me agian." (Amend. Compl. R. 22, Page ID #:141).

As noted above, after the last burst of OC spray, Julick was removed from the strip cage and taken to be decontaminated.  (Summ. J. Motion, R. 43, Page ID# 227; Extraordinary Occurrence Rpt. No. KSP-2022-12-106, R 43-5, Page ID# 291). Licensed Practical Nurse Kristen Horne decontaminated Julick with a large amount of water. (Extraordinary Occurrence Rpt. No. KSP-2022-12-106, R. 43-5, at Page ID# 291, 446*).* She attempted to get vital signs from Julick, but he refused. (*Id*. at Page ID# 446). She observed no injuries to Julick, and he reported no complaints at that time. (*Id*.).

After decontamination, Julick was placed back into the strip cage before being moved to a new cell in 3 Cellhouse, cell number 3 13L/018, where he remained on

5

property restrictions and constant watch. (Summ. J. Motion, R. 43, Page ID# 227; Extraordinary Occurrence Rpt. No. KSP-2022-12-106, R. 43-5, Page ID# 291). Shortly thereafter, Bond filed a disciplinary report charging Julick with a violation for attempting a staff assault. (*Id.*; Disciplinary Rpt. No. KSP-2023-0001813, R 43-6, Page ID# 302-04). That charge was later reduced by Jordan to "disobeying a direct order." (*Id.*; Plaintiff's Pretrial Memorandum, R. 33, Page ID# 181).

Lastly, Julick made allegations regarding his conditions of confinement from December 25, 2022, to January 4, 2022, when he was housed in the Restricted Housing Unit (RHU). (Amend. Compl. R. 22, PageID#: 143). Julick stated that Denny searched his cell every morning and made Plaintiff "lay face down on [his] stomach in paper boxes, barefoot, freezing, and shivering." (*Id.*). Julick also alleged that he had no clothes, blankets, sheets, or shoes and was denied a shower and the ability to brush his teeth for the 10 days he was in the RHU. (*Id.*). He also alleged that for eight of those days his cell "had feces on the floor and walls, I was made to walk barefoot in this cell with dirt and feces caked to my feet." (*Id.*). He alleged that Denny denied him "cleaning supplies, denied me a shower, clothes, and a safe, and warm environment." (*Id.*). He stated that he later met with a mental health provider and is now taking medication for anxiety disorder. (*Id.*). Julick stated that "from 12-22 to February 23 my mattress/bed was taken 7 out of 10 days by Jason Denny from breakfast to 11:00 pm at night." (*Id.* at Page ID# 144). Julick asserted that Denny and

Villasenor were responsible for these conditions of confinement. (*Id.*) Julick also stated that officers told him he was "being treated like this under the Warden Scott Jordan's firm orders." (*Id.*,).

## II.    Procedural background.

Julick sued KSP officials under 42 U.S.C. § 1983, alleging that he faced excessive force and cruel and unusual conditions of confinement. (*See* Amend. Compl., R. 22, Page ID # 143-46). As relevant here, Julick pursued individual-capacity claims against Warden Scott Jordan and three KSP officers—Denny, Bond, and Villasenor. (*See id.*)

Julick alleged that Bond violated his Eighth Amendment rights through the use of excessive force. (*See* Amend. Compl., R. 22, Page ID # 141-42). Julick also contended that Denny and Villasenor, upon orders from Jordan, were responsible for the conditions of his confinement, and that the same violated his Eighth Amendment right to be free from cruel and unusual punishment. (*Id.* at Page ID # 143-46). At the screening stage, the court allowed both the excessive-force claim against Bond and the conditions-of-confinement claim against Denny, Villasenor, and Jordan to proceed. (Screening Opinion & Order, R. 23, Page ID # 158).

Defendants then moved for summary judgment, arguing that Julick's excessive-force and conditions-of-confinement claims must be dismissed because Julick lacked evidence that supported the objective or subjective components of an Eighth Amendment claim. (Summ. J. Motion, R. 43, Page ID # 225-37). Defendants

7

also moved to seal the video of Bond use of OC spray upon Julick, because public disclosure of the video would pose "a security risk by showing camera angles and blind spots" within KSP to members of the public. (Motion to Seal, R.40, Page ID # 216). The district court granted the motion to seal in part, requiring Defendants to share the video with Julick, but otherwise permitting the video to be sealed on the district court docket. (Memo. & Order Sealing Video, R.45, Page ID # 309-12).

Thereafter, the court granted Defendants' motion for summary judgment on Julick's Eighth Amendment excessive-force claim. (Summ. J. Opinion & Order, R. 68, Page ID # 592-98). The court held that Bond's use of force was justified in order to gain compliance from Julick, who repeatedly disobeyed his order to face the wall while in the strip cage. (*Id.*)

The court also granted summary judgment on Julick's conditions-of-confinement claim. (Summ. J. Opinion & Order, R. 68, Page ID # 598-603). The court did not address the subjective component of the claim, finding that there were no genuine issues of fact regarding the claim, and that Julick failed to meet his burden as to the objective component as a matter of law. The court held that, even if the conditions of confinement were as Julick alleged, based on United States Supreme Court and Sixth Circuit precedent, those conditions were not unconstitutional. (*Id.*) From the court's order granting summary judgment, Appellant now appeals.

## SUMMARY OF THE ARGUMENT

I.      Bond's use of force was a good-faith effort to maintain or restore discipline and not used maliciously or sadistically to cause Julick harm.  The undisputed facts show that, while ordered to assume a kneeling compliance position in the strip cage, Julick was further ordered by Bond to face the wall.  The video evidence irrefutably shows, and Julick admits, that he repeatedly disobeyed this order by turning his head toward Bond.  While Julick maintains that he posed no reasonable threat, and the use of OC spray was thus disproportionate to the threat and therefore gratuitous, this is not the relevant analysis.  Rather, the issue is one of compliance. Inmates do not have the right to pick and choose which orders they will obey.  Both the United States Supreme Court and this Court have consistently held that the use of OC spray to gain compliance from an inmate is not malicious or sadistic and therefore does not meet the objective component of an excessive force claim.  Further, because Julick only suffered temporary discomfort, there is no dispute as to Julick's actions which justified the use of force, the amount of force used to gain compliance was proportional, and that Julick was warned before, and decontaminated shortly after the use of OC spray, Julick failed to meet the subjective component of his excessive force claim.  The district court therefore correctly granted Bond summary judgment.

II.     Assuming that Julick was exposed to the conditions alleged in his amended complaint, those conditions do not meet the objective component of his conditions-

of-confinement claim. While Julick complains that the conditions he alleged must be considered together, both the United States Supreme Court and this Court have held that conditions of confinement cases are highly specific, with the length of exposure to the conditions often being paramount.  Thus, courts must examine the interrelationship between the severity of the conditions and their duration, along with any other relevant evidence.  Here, the district court properly considered Julick's complaints regarding clothing, bedding, cell temperature, and lack of access to personal hygiene separately from his complaint regarding exposure to fecal material. Based on the applicable case law, Julick failed to meet the objective component of his conditions of confinement claim.  The district court therefore correctly granted Jordan, Denney, and Villasenor summary judgment.

## <u>STANDARD OF REVIEW</u>

Appellees Bond, Jordan, Denny and Villasenor do not dispute Julick's statement of the legal standard for summary judgment or for this Court's review of the district court's grant of summary judgment.

## **ARGUMENT**

**I.   The District Court properly granted summary judgment on Julick's Eighth Amendment excessive force claim because Bond's use of OC spray to gain compliance of Julick, did not meet the objective or subjective component of the claim.**

Julick argues that Bond's use of OC spray was unnecessary because Julick was handcuffed, shackled, and secured in a locked strip cage, and thus was incapable of posing a physical threat to Bond. (Julick Brief, R. 16, Page ID# 26). Julick asserts that Bond "escalated the situation from at most a verbal exchange to chemical force." (Id. at Page ID# 32). Alternatively, Julick suggests that "Bond could have backed away from the locked cage from any perceived threats…or banged the strip-cage grate with a baton." (*Id*. at Page ID# 32-33).[1] However, the district court correctly noted that the issue is not whether Julick posed a threat to Bond by spitting, but whether the use of force was applied in a good faith effort to gain compliance. (Summ. J. Op. & Order, R. 68, Page ID# 597.)

" 'Inmates cannot be permitted to decide which orders they will obey, and when they will obey them. Someone must exercise authority and control.' " *Caldwell v. Moore*, 968 F.2d 595, 601 (6th Cir. 1992) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984). Here, the district court correctly found that there

---

[1] There is no evidence in the record to suggest the correctional officers at KSP, including Bond, actually carry batons while on duty.

11

were no genuine issues of fact regarding both the objective and subjective components of Julick's excessive force claim, because Bond's use of force was applied to gain compliance by Julick.

The Sixth Circuit set forth the Eighth Amendment excessive-force standard as follows:

> What qualifies as the "unnecessary and wanton infliction of pain"? This requirement has objective and subjective components, both of which follow from the Eighth Amendment's text. *See Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021); *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only "cruel and unusual" deprivations, not just uncomfortable or "even harsh" ones. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Phillips*, 14 F.4th at 534. Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that "inflict[s]" "punishment," not accidental conduct that causes injury. *See Phillips*, 14 F.4th at 535 (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023).

### 1.  Objective component

The objective component of establishing an excessive-force claim requires the prisoner to prove that "sufficiently serious" pain was inflicted. *Williams v. Curtin*, 631 F.3d at 383.  "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Hernandez v. Simmons*, No. 19-5344, 2020 U.S. App. LEXIS 29233, at *1-2, 7 (6th Cir. Sept. 14, 2020)(affirming entry of

summary judgment where the inmate alleged that "the chemical agents burned his eyes and skin and 'melted' his contact lenses to his eyes, causing his eyes to bleed when removed his contact lenses" finding that the alleged injuries did not meet the objective component). The use of pepper spray or mace to control a prison inmate is not malicious or sadistic, per se. *Id.* (citing *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)). "Even where a suspect does not actively resist, an excessive-force claimant must show something more than de minimis force." *Id.* "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at *7-8 (quoting *Hudson v. McMillian*, 503 U.S. at 9-10).

Here, the district court described in detail its review of the soundless video of the incident. (Summ. J. Op. & Order, DN 68, Page ID#593-94).  The court found that Julick repeatedly turned his head to the right, away from the wall, and that Bond observed this behavior for twenty seconds before removing his OC spray can and pointing it at Julick.  (*Id.*) After speaking with Julick, he waited five seconds while Julick can be seen turning his head to the right. (*Id.*)  Bond then discharged OC spray at Julick. (*Id.*) He did so two more times in response to Julick turning his head away from the wall. (Id.) The court also noted that Julick did not allege any injury other than the application of the spray itself. (*Id.* at Page ID# 595). The district court

13

correctly found that under these facts there were no genuine issues of material fact, that, consistent with the above cited cases, Bond's use of OC spray was not the sort of force "repugnant to the conscience of mankind" (citing *Hudson*), and therefore Julick failed to meet the objective component of his claim.

## 2. Subjective component

The district court next applied the factors identified in *Johnson v. Sootsman* to determine whether Julick met the subjective component of his excessive force claim. Therein the Sixth Circuit stated:

> As a subjective matter, the Court has held that prisoners who challenge a correctional officer's use of force must prove more than that the officer acted with 'deliberate indifference' to whether the force was necessary (the type of intent that prisoners must prove to challenge their conditions of confinement or medical care). *See [Hudson v. McMillian*, 503 U.S.]* at 5-6; *cf. Wilson*, 501 U.S. at 302-03. The Court has instead described the "core judicial inquiry" in the use-of-force context as distinguishing between force used in a "good-faith effort to maintain or restore discipline" and force used "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, (2010) (per curiam) (quoting *Hudson [v. McMillian]*, 503 U.S. at 7). Only the latter kind of force—force exerted maliciously and sadistically to inflict pain—violates the Eighth Amendment. *See Hudson [v. McMillian]*, 503 U.S. at 5-7. So even if an officer uses force because of an "unreasonable" belief that it is necessary to restrain a prisoner, the officer does not violate the Eighth Amendment. *Whitley*, 475 U.S. at 324.

*Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023). The court further explained:

To decide whether a jury could find that an officer acted with this malicious intent, the Supreme Court has identified several factors to consider: What was the extent of the prisoner's injury? What was the nature of the threat that justified the use of force? Was the amount of force proportional to the threat? And did the officer take any actions designed to reduce the required amount of force? *Hudson [v. McMillian]*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. More generally, we have added that, while judges may review an encounter by slowing down, pausing, and replaying a video, officers have no such luxury. They must make quick decisions in the heat of the moment. So we defer to their decisions and avoid "unreasonable post hoc judicial second-guessing" of their conduct. *Lockett v. Suardini*, 526 F.3d 866, 875 (6th Cir. 2008) (citation omitted); *see also Griffin*, 604 F.3d at 954.

*Id*. at 618.

In addressing the first factor, the district court noted that Julick's only injury was discomfort from the OC spray. (Summ. J. Op. & Order, DN 68, Page ID# 596). This observation is correct and is consistent with Julick's statement to Licensed Practical Nurse Kristen Horne when he was decontaminated. (Extraordinary Occurrence Rpt. No. KSP-2022-12-106, R. 43-5, at Page ID# 291, 446*)*. She attempted to get vital signs from Julick, but he refused. *(Id*. at Page ID# 446). She observed no injuries to Julick, and he reported no complaints at that time. (*Id*.).

Next, the district court addressed the second factor, that is, whether the nature of the threat justified the use of force. (Summ. J. Op. & Order, DN 68, Page ID# 596). Here, the court correctly found that there was no dispute that Bond ordered Julick to face the wall. (*Id*.) First, the court noted that the video evidence shows Julick repeatedly turning his head toward Bond before each burst of OC spray. (*Id*.) Next, because the

15

video was soundless, the court noted Bond's affidavit, in which he clearly established that he repeatedly issued explicit orders to Julick to face the wall, that Julick repeatedly disobeyed those orders, and that he administered OC spray to gain compliance. (*Id.*) Finally, the court stated that Julick himself did not dispute that he turned his head, acknowledging in his amended complaint that he did so. (*Id.*) Of note, Julick makes no mention of this acknowledgment in his opening brief.

Relatedly, the district court found that the parties' debate whether it was reasonable for Bond to believe Julick was prepared to spit at him was misplaced. (Summ. J. Op. & Order, DN 68, Page ID# 597).  Rather, the issue was Julick's repeated failure to comply with Bond's orders.  As such,  the court correctly found that his use of OC spray was not used "maliciously and sadistically to cause harm" but was applied  in a "good-faith effort to maintain or restore discipline" for an inmate who was disobeying his orders, citing *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (summary judgment granted where videotape squarely demonstrates that inmate disobeyed repeated direct orders prior to the use of pepper spray).  (*Id.*)

The district court next addressed the third factor as to whether the amount of force used was proportional to the threat. (Summ. J. Op. & Order, DN 68, Page ID# 597).  Here the district court once again turned to the video, which showed that Bond administered three short bursts of OC spray in response to Julick repeatedly turning his

16

head toward Bond. (*Id.*) Based on the video evidence, the court correctly found Bond's use of force to be reasonable and proportional to gain Julick's compliance with his orders. (*Id.*) Importantly, the court cited *Thomas v. Greene*, 201 F.3d 441 (6th Cir. 1999) (Table), wherein this Court affirmed a district court's dismissal for failure to state a claim where the inmate alleged corrections officer sprayed him with mace on the back of his body while handcuffed, where the inmate "was threatening and uncooperative throughout the [use of force] incident". (*Id.*) This case directly contradicts Julick's argument that OC spray can never be used against a handcuffed inmate. (Julick Brief, R. 16, Page ID# 34).

Lastly, the district court addressed the fourth factor in *Sootsman*, that is, whether the officer took any actions designed to reduce the amount of force used. (Op. & Order, DN 68, Page ID# 597). Here, the court pointed to the video evidence showing that, in the face of repeated acts of disobedience by Julick, Bond delayed use of, and issued verbal warnings before deploying OC spray. (*Id.*) Further, these were short bursts, cumulatively lasting less than three seconds. (*Id.*) Finally, within approximately eleven minutes Julick was removed from the strip cage and was decontaminated, and as noted above, was examined by a nurse for injuries. (*Id.*) Based on this evidence, the district court correctly found that Bond's use of force was not done "maliciously and sadistically to cause harm." (*Id.*)

17

In this instance, the actions of Julick, and Bond's reaction thereto, are undisputed. The district court therefore correctly found that there were no genuine issues of material fact, and that Julick had not met his burden regarding the subjective component of his claim. The district court therefore did not commit error in granting Bond summary judgment as to this claim, and that same should be affirmed.

II.    **The District Court properly granted summary judgment on Julick's Eighth Amendment conditions of confinement claim against Jordan, Denny, and Villasenor because the alleged conditions did not meet the objective component of the claim.**

Julick's conditions of confinement claim is based on his confinement in the Restricted Housing Unit (RHU) from December 25, 2022, to January 4, 2022. (Amend. Compl., R. 22, Page ID#: 143). Julick alleged that he was not issued clothes, blankets, sheets, or shoes and was denied a shower and the ability to brush his teeth for the 10 days he was in the RHU. (*Id.*). Julick stated that Denny searched his cell every morning and made him "lay face down on [his] stomach in paper boxes, barefoot, freezing, and shivering." (*Id.*)

He also alleged that his cell "had feces on the floor and walls, I was made to walk barefoot in this cell with dirt and feces caked to my feet." (*Id.*). He stated that Denny denied him "cleaning supplies, denied me a shower, clothes, and a safe, and warm environment." (*Id.*). Julick asserted that Denny and Villasenor were responsible for these conditions of confinement. He also stated that officers told him

18

he was "being treated like this under the Warden Scott Jordan's firm orders." (*Id.*, PageID#: 144). Here, however, the district court correctly applied and distinguished United States Supreme Court and Sixth Circuit case law in finding that the conditions alleged did not meet the objective component of his claim.

The Eighth Amendment's prohibition against cruel and unusual punishment applies to inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834, 825 (1994). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. at 832 (quoting *Hudson v. Palmer*, 468 U.S. 516, 517 (1984)). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). Instead, "[e]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. at 9.

An Eighth Amendment conditions-of-confinement claim has an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To state a conditions-of-confinement claim pursuant to the Eighth Amendment, a plaintiff must allege (1) a deprivation that is objectively "sufficiently serious," for example, that the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm," (the objective component) and (2) that the defendant prison official has a

19

"sufficiently culpable state of mind," specifically one of "deliberate indifference" to inmate health or safety (the subjective component). *Farmer*, 511 U.S. at 834 (citations and internal quotations omitted).

"Conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Certain conditions "may be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 687 (1978). Courts should examine "the interrelationship between the severe conditions and their duration, coupled with any other relevant evidence in the record." *Francis v. Altiere*, 491 F. App'x 539, 543 (6th Cir. 2012).

Because the examination of conditions of confinement is fact-specific, given the additional concerns regarding exposure to feces, the district court correctly addressed that issue separately from the other allegations. With regard to Julick's allegations that he was made to wear paper boxers, that the cell was freezing, that he had no clothes, blankets, sheets, or shoes, and that he was denied a shower and the ability to brush his teeth during the ten days he was housed in the RHU,  the district court correctly found that he failed to establish a genuine issue of material fact with regard to the objective component.

Once again, *Hudson* states that "extreme deprivations" are required to make out a condition of confinement claim.  In comparing the length of exposure and the

20

nature of the deprivations alleged by Julick, as required by *Francis*, with other decisions in this circuit which address similar allegations, it's clear that the district court's conclusion is consistent with those findings. Julick has therefore not met the objective component of his claim regarding these allegations. *See, e.g.*, *Watison v. Perry*, No. 23-5059, 2024 U.S. App. LEXIS 3674, at *6 (6th Cir. Feb. 15, 2024) (nine days in segregation in a cold cell with no bedding or change in clothing not so severe as to violate the Eighth Amendment); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) ("the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment"); *Keltner v. Cook*, No. 3:16-CV-179-TA, 2017 U.S. Dist. LEXIS 87084, at *5-6 (E.D. Tenn. Dec. 11, 2024) (six-day period in a cell with stopped up toilets and no showers or clean clothes does not meet the objective component); *Taylor v. Wright*, No. 20-13041, 2023 U.S. Dist. LEXIS 134110, at *11 (E.D. Mich. Apr. 19, 2023) (twenty-day stay in a dirty cell combined with a denial of clean clothes and cleaning supplies not sufficient to meet objective components), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 133155 ( E.D. Mich., Aug. 1, 2023); *Moore v. Goulet*, No. 1:22-cv-279, 2023 U.S. Dist. LEXIS 165728, at *13-16 (W.D. Mich. Aug. 21, 2023) (multiple days in a cell with sewage and flooding issues with no access to cleaning supplies does not meet the objective component), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 164679 (W.D. Mich., Sept. 15, 2023); *Chilton v. Walters*, No. 3:21 CV

21

1312, 2022 U.S. Dist. LEXIS 32066, at \*6-10 (N.D. Ohio Feb. 23, 2022) (being placed in a cold cell in only a paper gown and without a blanket or mattress for nine days does not violate the Eighth Amendment); *Johnson v. Cool*, No. 1:22-CV-00031, 2024 WL 3992412, at \*10-11 (S.D. Ohio Aug. 29, 2024), *report and recommendation adopted*, No. 1:22-CV-31, 2025 WL 360607 (S.D. Ohio Jan. 31, 2025) (no access to a "shower, water to wash his hands, sanitizer wipes, a mattress, undergarments," for 21 days and 14 days in only an unclean suicide gown without undergarments did not constitute objectively serious harms).

Julick asserts that in *Walker v. Mintzes*, 771 F.2d 920, 928 (6th Cir. 1985) this Court established a seven-day "constitutional minimum" for inmate showers. (Julick Brief, R. 16, Page ID# 41).  That case, however, is distinguishable from the present action.  There, the Court was addressing the minimum number of weekly showers for RHU inmates that is constitutionally permissible as a matter of long-term policy, and not the limited, time specific deprivation alleged here.  Further, as to his bedding, Julick acknowledges that he had access to a mattress at night, stating "from 12-22 to February 23 my mattress/bed was taken 7 out of 10 days by Jason Denny from breakfast to 11:00 pm at night." (Amend. Compl. R. 22, Page ID# 144). Therefore, the district court did not err in finding that the above alleged conditions do not amount to the "extreme deprivations" required by *Hudson*.

22

As noted above, the examination of conditions of confinement is fact-specific. Here, the district court closely examined Julick's specific allegations regarding exposure to fecal matter. When compared to other instances addressed in this and sister circuits, the district court's conclusion is consistent with those in which similar exposure to feces did not meet the objective component of a conditions of confinement claim.

To begin, not every exposure to feces amounts to a constitutional violation. "Courts have typically found that temporary exposure to feces does not meet the objective component of the Eighth Amendment conditions of confinement test." *Brown v. Mahlman*, No. 1:22-cv-00239, 2022 U.S. Dist. LEXIS 228343, at *10 (S.D. Ohio Dec. 19, 2022) (citing *Lamb v. Howe*, 677 at 209-10).

The district court cited a clear example of a constitutionally deficient condition involving feces, citing *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam). (Summ. J. Op. & Order, DN 68, Page ID# 601). There, the United States Supreme Court addressed exposure to feces and reversed the lower court's entry of summary judgment. The court described the conditions as follows:

> Correctional officers confined [the inmate] in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in "'massive amounts' of feces": all over the floor, the ceiling, the window, the walls, and even "'packed inside the water faucet.'" *Taylor v. Stevens*, 946 F. 3d 211, 218 ([5th Cir.] 2019). Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to

23

dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage. *Id.* at 53 (footnote omitted).

(*Id.,* citing *Taylor* at 7-8. The court held that no reasonable correctional officer could have concluded that it was constitutionally permissible to house the plaintiff under those conditions. (*Id.,* citing *Taylor* at 8-9). In doing so, the court also stated, "The Fifth Circuit identified no evidence that the conditions of Taylor's confinement were compelled by necessity or exigency." (*Id.,* citing *Taylor* at 9).

The district court then distinguished the conditions described by Julick with those found in *Taylor*. (Summ. J. Op. & Order, DN 68, Page ID# 601-02). The court stated that, unlike the condition alleged in *Taylor*, Julick did not describe being exposed to "'massive amounts' of feces" or raw sewage spilling across the floor. (*Id.*) Rather, the district court found his description of walking on floors caked in dirt and feces for ten days did not equate to the extreme conditions alleged in *Taylor v. Rios* (*Id.*), citing *Newell v. Watson*, No. 1:14-CV-304, 2016 U.S. Dist. LEXIS 41054, at *22 (E.D. Tenn. Mar. 29, 2016) (allegations that "the bedding is stained and stinking due to mold, and the inmates' underwear is only washed every two weeks" were insufficient to state an Eighth Amendment claim); *Anderson v. Chapman*, No. 3:12-cv-88 (CAR), 2013 U.S. Dist. LEXIS 118731 (M.D. Ga. July 19, 2013) (recommending summary judgment on inmate's claim that he "was forced

24

to sleep on the floor with dried urine, blood, and feces" and "lacked access to clothing, a mattress, a blanket, toilet paper, water, or showers" while housed in isolation for five days finding the allegations did not meet the objective component of an Eighth Amendment claim), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 117559 (M.D. Ga., Aug. 20, 2013). And, as noted above, Julick was issued a mattress to sleep on.

Next, the district court also found that Julick made no allegation that he was unable to eat or drink during his time housed in the RHU or that he suffered any other physical harm as a result of the conditions (Summ. J. Op. & Order, DN 68, Page ID# 602), citing *Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 U.S. Dist. LEXIS 7882, at *3, 5 (M.D. Tenn. Feb. 25, 2015) (three-week sewage leak with no resulting harm failed to satisfy objective component), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 22522 (M.D. Tenn. Feb. 24, 2015). *See Keel v. Davidson Cnty. Sheriff's Office*, No. 3:13-1145, 2015 U.S. Dist. LEXIS 7882, at *3, 5 (M.D. Tenn. Feb. 25, 2015) (three-week sewage leak with no resulting harm failed to satisfy objective component), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 22522 (M.D. Tenn. Feb. 24, 2015). And unlike *Taylor*, Julick also did not allege that he had no access to clean water.

As to the duration of the exposure, the district court found that Julick's exposure to the alleged conditions, while four days longer than in *Taylor v. Rios*,

25

was still limited and relatively short (Summ. J. Op. & Order, DN 68, Page ID# 602), citing for comparison *Pinkston v. Hall*, No. No. 5:18-cv-103-MTP, 2020 U.S. Dist. LEXIS 86763, at \*43-44 (S.D. Miss. May 18, 2020) (denying summary judgment motion where plaintiff alleged that he had been in a filthy cell with vermin and dried blood, feces, and mildew covering the walls for two years and has not been given an opportunity to clean his cell).

Lastly, the district court addressed the exigency of Julick's placement in the RHU. (Summ. J. Op. & Order, DN 68, Page ID# 602). The court found that Julick did not dispute that he was housed in the RHU because he was a member of the STG which had committed the assault on the officer. (*Id*.) Nor did he dispute that he was issued paper boxes because he threatened self-harm. (*Id*.) The district court therefore found that, unlike in *Taylor v. Rios*, there was a showing of necessity or exigency for the conditions in which Julick was housed. (*Id*.)  Therefore, the district court did not err in finding that the above alleged conditions did not amount to the "extreme deprivations" required by *Hudson.*

In this instance, it's clear that the district court carefully examined the specific allegations made by Julick regarding his conditions of confinement claim, weighed the severity of those conditions and their duration, and considered them with other relevant evidence in finding that he failed to meet the objective component of his claim.  The district court's conclusion is consistent with the finding of other courts

26

in this and sister circuits regarding similar conditions.  The district court therefore did not err in finding that Julick failed to demonstrate a genuine issue of material fact as to the objective component of his conditions of confinement claim, and in granting summary judgment to Jordan, Denney, and Villasenor.  The judgment of the district court should therefore be affirmed.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's grant of summary judgment in favor of Defendants Bond, Jordan, Denny, and Villasenor.

Respectfully Submitted,

/s/ Mark F. Bizzell

Mark F.
Bizzell
JUSTICE AND PUBLIC SAFETY CABINET
OFFICE OF LEGAL SERVICES
125 HOLMES STREET, 2ND FLOOR
FRANKFORT, KY 40601
502-782-1097
mark.bizzell@ky.gov

Defendants- Appellees

27

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type volume limitations of Fed. R. App. P. 32(a)(7) because it contains 27 pages, 6777 words and 595 lines of text.

*/s/Mark F. Bizzell*

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, I electronically filed the foregoing with the clerk of the Court by using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record in this matter.

*/s/Mark F. Bizzell*
Counsel for Appellees

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| | Title | Docket # | Page ID # |
|---|---|---|---|
| 1. | Amended Complaint | R. 22 | 137-48 |
| 2. | Screening Opinion & Order | R. 23 | 152-58 |
| 3. | Motion to Seal | R. 40 | 216-19 |
| 4. | Institutional Video | R. 41 | N/A |
| 5. | Summary Judgment Motion | R. 43 | 225-37 |
| 6. | Extraordinary Occurrence Report: 2022-12-098 | R 43-1 | 238-60 |
| 7. | Behavior Control Form: 12/25/22 | R. 43-2 | 261-62 |
| 8. | Extraordinary Occurrence Report: 2022-12-100 | R. 43-3 | 263-88 |
| 9. | Behavior Control Form: 12/26/22 | R. 43-4 | 289-90 |
| 10. | Extraordinary Occurrence Report: 2022-12-106 | R. 43-5 | 291-301 |
| 11. | Disciplinary Report (DR): KSP-2023-1813 | R. 43-6 | 302-04 |
| 12. | Adjustment Hearing Audio Recording | R. 43-7 | N/A |
| 13. | Memorandum & Order Sealing Video | R. 45 | 309-12 |
| 14. | Memorandum & Order Dismissing Massey | R. 53 | 342-43 |
| 15. | Affidavit of Dylan Bond | R. 59-8 | 500-502 |
| 16. | Summary Judgment Opinion & Order | R. 68 | 585-603 |
| 17. | Notice of Appeal | R. 70 | 605-08 |

29