No. 25-5667

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

---

Jacob Julick,
*Plaintiff-Appellant,*

v.

Scott Jordan, et al.
*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Western District of Kentucky
Case No. 5:23-CV-51
The Honorable Joseph H. McKinley, Jr.

---

DEFENDANTS – APPELLEES'
RESPONSE TO ORDER TO SHOW CAUSE [DN 41]
FOR VIDEO TO REMAIN UNDER SEAL

---

Mark F. Bizzell
JUSTICE AND PUBLIC SAFETY CABINET
OFFICE OF LEGAL SERVICES
125 HOLMES STREET, 2ND FLOOR
FRANKFORT, KY 40601
502-782-1097
mark.bizzell@ky.gov
*Counsel for Defendants-Appellees*

Come the Defendants-Appellees Dylan Bond ("Bond"), Scott Jordan ("Jordan"), Jason Denny ("Denny"), and Sasha Primozich Villasenor ("Villasenor") (hereinafter "Defendants"), and in compliance with the August 7, 2026 Order, submit this response "to show cause why the video of the pepper-spray incident (or certain parts of it) meets [the Court's] 'demanding requirements for a seal.'" (August 7, 2026 Order, Doc. 41 at 2) (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 308 (6th Cir. 2016)).

Although there is a strong presumption in favor of openness in court records, a party can meet the burden to overcome the presumption by showing a most compelling reason to justify non-disclosure, especially by showing a clearly defined and serious injury by disclosure of the record. *Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (quoting *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983)); *Grae v. Corr. Corp. of Am.*, 134 F.4th 927, 932 (6th Cir. 2025). Courts have recognized such an injury in certain circumstances for prison video surveillance footage and allowed that video to be filed under seal. Those circumstances also apply here and are the reason Defendants seek to have the video in this case remain under seal.

When a court does seal a record, it must explain "'why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and

why the seal itself is no broader than necessary[.]'" *Grae*, 134 F.4th at 930 (citing *Shane Group, Inc.*, 825 F.3d at 306). The Defendants now offer that explanation.

I. The interests in support of nondisclosure are compelling as there is a clearly defined and serious injury by disclosing this prison video surveillance footage.

In this case, once Corrections officials determined that Julick was involved in the December 25, 2022, assault on the corrections officer, they transferred him into the 3 Cellhouse restricted housing unit ("RHU"), cell 3 14L/004, classified as "maximum assault status[.]" (Summ. J. Motion, R. 43, Page ID# 225-26; 12/25/22 Behavioral Control Form, R. 43-2, Page ID# 261-62). The holding cell (strip cage) in the 3 Cellhouse restricted housing unit is where inmates are processed for entry into the unit (and if incidents occur while in the unit) and is where the OC spray incident occurred the next day.

The restrictive housing unit is a separate area of the prison with more restrictive security protocols where inmates who have caused a disturbance, or who present a danger to themselves or others, or who have harmed others can be housed, monitored by staff, and evaluated by medical professionals. Disclosure of the video surveillance footage from this area presents a heightened danger to prison safety and security because of how and when this area of the prison is used. Video would show the methods of surveillance, camera angles, camera blind spots, and would show the layout, which in publicly accessible video footage could be broadcast, slowed down,

replayed, and studied. This would increase the potential for inmate escape, the introduction of weapons or contraband, and assault on staff and other inmates.

Various courts have found that the interest in prison safety and security is compelling enough to merit sealing:

> [T]he release of prison surveillance footage to the public could pose a threat to "the safety and security of the inmates, staff, and institution" because the footage may reveal the institution's "methods or practices in obtaining the video" and "show areas where the camera is capable of focusing and blind spots outside the camera's range."

*Cooper v. Bower*, No. 5:15-CV-P249-TBR, 2017 WL 3388953 at *1 (W.D. Ky. Aug. 4, 2017) (internal citations omitted) (sealing video at a Kentucky Department of Corrections prison). *See, e.g., Arnold v. Washington*, No. 13-CV-14137, 2018 WL 11302913, at *2 (E.D. Mich. Mar. 28, 2018) (granting protective order for video of a prison kitchen); *McMillen v. Windham*, No. 3:16-CV-558-CRS, 2018 WL 652829, at *3 (W.D. Ky. Jan. 31, 2018) (citing *Fourhorn v. City and County of Denver*, 261 F.R.D. 564 (D. Colo. 2009) (where "'the security and safety risk to inmates, staff and the public,'" precluded "'unrestricted access of the surveillance video[ ]'" from a Kentucky Department of Juvenile Justice facility); *Atkinson v Mackinnon*, No. 14-CV-736-BBC, 2016 WL 2901753, at *9 (W.D. Wis. May 18, 2016) (finding that the concerns raised by the Bureau of Prisons regarding disclosure of the technical capabilities of surveillance cameras are "legitimate concern[s]").

These concerns have been recognized by other courts and the potential serious harm has been clearly identified:

> failing to seal the surveillance videos would increase the risk of "inmate escape and the introduction of contraband or weapons" ... as well as the risk of "assaults on prisoners, staff, and visitors[.]" In particular, ... making the videos publicly available could reveal "the layout, structure, field of view, resolution of the cameras, and camera placement" ... including potential blind spots and the extent to which the cameras capture individual prison cells.

*Est. of Miller v. Michigan Dep't of Corr.*, No. 22-10934, 2022 WL 3153794, at *1 (E.D. Mich. Aug. 8, 2022) (internal citations omitted) (where the court noted the prison's concerns and agreed). Additional concerns presented by broadcast, replay, and study have also been recognized and sufficient to warrant seal:

> leaving these videos unsealed would give individuals outside the prison the ability to "freeze images, slow playback, or zoom in to see details of the activities on camera that might not be apparent to the naked eye at full speed." .... In other words, the videos provide more information than any individual could perceive on their own. And, ... this valuable information about the prison interior could be used to aid inmate escapes or introduce contraband.

*Est. of Miller*, 2022 WL 3153794, at *2. Thus, disclosure of the OC spray incident in the restrictive housing unit in this case presents a heightened danger to prison safety and security (in the form of escape, introduction of weapons or contraband, or assault on staff or other inmates) because of how and when this area of the prison

is used and how a video could be used to study a number of details including layout, camera angles, and blind spots.

II. <u>The interest supporting access is less compelling by comparison</u>.

Although there is a public interest in accessing court records and following court cases, there is also a public interest in the safety and security of institutions. *Pell v Procunier*, 417 US 817, 823 (1974) ("[C]entral to all other corrections goals is the institutional consideration of internal security within the corrections facilities themselves."); *Rhodes v. Chapman*, 452 US 337, 349 n14 (1981) ("a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators."); *Bell v Wolfish*, 441 US 520, 547 (1979) ("[p]rison administrators … should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

While KRS 197.025 is a state statute about the confidentiality of prison records when publicly requested and is not controlling, the statute does show that the state legislature has recognized a public interest in protecting certain prison records from disclosure because of the "threat to the security of the inmate, any other inmate, correctional staff, the institution, or any other person." KRS 197.02(1), (6). This Court has noted that information required by statute to be maintained in confidence is typically enough to overcome the presumption of access:

> But otherwise, "in civil litigation, only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of a sexual assault),' is typically enough to overcome the presumption of access." *Id.* (quoting *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002)).

*Grae*, 134 F.4th at 932.

In addition, the public can follow these proceedings without accessing the video. In 307 words, the District Court accurately described what the video showed of the interaction between Bond and Julick. (Summ. J. Op. & Order, R. 68, Page ID# 593-94; see Institutional Video at 0:00-15:30, R. 41 [filed under seal]). The District Court depicted both parties' actions in the OC spray incident, which is all that can be considered when assessing Julick's excessive force claim. The camera angles, blind spots, layout, and additional details are not elements in an excessive analysis, but are essential concerns for the safety and security of the prison. These details are what the seal protects and why the Defendants ask that protection remain in place. Keeping the video sealed protects the public interest. *Est. of Miller*, 2022 WL 3153794, at *2 ("more importantly, sealing the videos may serve the public interest by decreasing the likelihood of inmate escape and the introduction of contraband or weapons into prisons.").

III. <u>The seal itself is no broader than necessary</u>.

Here, only the video of the OC spray incident is sealed. In the interest of litigating his case, Julick or his attorney has access to view the video. The Court also has access to the video and the seal does not affect the parties' or the Court's ability to describe what occurred between the inmate and staff during the OC spray incident. As noted in the previous section, the District Court provided a detailed description of the parties' actions during the incident, and those actions are the evidence to be considered in the analysis of the excessive force claim. The details the Defendants seek to protect are not essential to that analysis.

Disclosure of the video is disclosure to the world at large and presents a very definite and real risk to safety and security at the prison for staff and inmates alike. By being able to see what the surveillance camera sees, the public would have knowledge about camera blind spots and their location, would provide to the public and the prisoners a blueprint in video form that could be replayed and studied for details that would allow prisoners to take more calculated risks and potentially avoid surveillance when planning to engage in prohibited activity. "”While there is value to the openness of our court system which promotes accountability and sheds light on matters of public importance, confidentiality may be necessary in certain cases.'" *McMillen v. Windham*, No. 3:16-CV-558-CRS, 2018 WL 652829, at *3 (W.D. Ky. Jan. 31, 2018) (internal citation omitted). This is such a case.

WHEREFORE, Defendants-Appellees respectfully request that the video surveillance footage filed under seal remain under seal.

Dated: August 28, 2026.

Respectfully Submitted,

/s/ Mark F. Bizzell

Mark F. Bizzell
JUSTICE AND PUBLIC SAFETY CABINET
OFFICE OF LEGAL SERVICES
125 HOLMES STREET, 2ND FLOOR
FRANKFORT, KY 40601
502-782-1097
mark.bizzell@ky.gov
Defendants- Appellees

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

This Response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1976 words, excluding the parts of the motion exempted by Fed. R. App. P. 27(a)(2)(B).

This Response complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word for Office 365 and Times New Roman 14-point font.

/s/ Mark F. Bizzell

Mark F. Bizzell